**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:13 AM August 7, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JENNY MARIE SHILLING, | ) | CASE NO. 12-62931 |
| | ) | |
| Debtor. | ) | ADV. NO. 13-6028 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| PARK NATIONAL BANK, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| JENNY MARIE SHILLING, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Plaintiff moves for summary judgment on its claim for nondischargeability under 11 U.S.C. § 523(a)(2)(B). Prebankruptcy, Plaintiff lent Debtor money for the purchase of a 2010 Jeep Patriot, allegedly based upon a credit application from Debtor. Defendant opposes summary judgment, arguing a factual question exists as to whether Plaintiff's reliance was reasonable. Neither party requested a hearing and the matter is now before the court.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

This opinion is not intended for publication or citation. The availability of this opinion, in

1

electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Most of the relevant facts are not in dispute. Debtor had a co-worker whose husband worked for Chuck Nicholson, Inc., a car dealership. On representation that he could get her approved for a car loan, she visited the dealership. She signed and initialed a credit application that indicated she earned $36,000 a year as a cocktail waitress at Thee Diamond Royale. Her signature on the application is not dated.

Debtor states that she did not complete the application. She says it was completed by a Chuck Nicholson, Inc. employee. She also attests that she did not review the credit application but merely signed and initialed the form as directed.

First-Knox National Bank, a division of The Park National Bank, the Plaintiff, extended her credit after receiving the credit application and obtaining a credit report. On September 19, 2012, Plaintiff made a loan of $20,608.54, plus interest, costs and fees, to Debtor for the purchase of a 2010 Jeep Patriot. The loan was payable over 72 months in installments of $360.41.

Plaintiff previously lent Debtor money for the purchase of another vehicle. In May 2011, she obtained a $15,000.00 loan for the purchase of a 2004 Mazda RX-8. Debtor made timely payments and repaid the loan nearly four years early.

On October 29, 2012, slightly more than one month after she obtained the loan, Debtor filed a chapter 7 bankruptcy petition. On Schedule I, she disclosed gross income of $761.00 per month, or $9,132.00 per year. A statement from her employer states that Debtor makes $150.00 per week.[1] In her Statement of Intention, she indicates her surrender of the Jeep Patriot. It is not clear if she ever made a payment on the loan.

## DISCUSSION

Plaintiff's motion for summary judgment is brought under Federal Rule of Bankruptcy Procedure 7056, the bankruptcy complement to Federal Rule of Civil Procedure 56. To succeed on summary judgment, the movant has to "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. Pro. 7056. All evidence, facts and inferences are viewed in the light most favorable to the nonmoving party. Superior Bank v. Boyd (In re Lewis), 398 F.3d 735 (6th Cir. 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

Plaintiff seeks nondischargeability of its debt under 11 U.S.C. § 523(a)(2)(B). The statute provides that a discharge does not cover a debt to the extent it was obtained by

      (B)    use of a statement in writing –

---

[1] There is no explanation for the discrepancy in income between the employer statement and Schedule I.

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). The party seeking the exception to discharge bears the burden of proof by a preponderance of the evidence. Glen Eagle Mktg., Inc. v. Brock (In re Brock), 39 F.3d 1181 (6th Cir. 1994) (unpublished) (citing Grogan v. Garner, 498 U.S. 279, 291 (1991)).

The first two elements are not in dispute. There is no question that the credit application is materially false. In the application, Debtor represents that she grosses $36,000.00 annually. Approximately six weeks after making this representation to Plaintiff, she filed a bankruptcy petition declaring, under the penalty of perjury, that her gross income was only $761.00 per month. A statement from her employer says her income is $150.00 per week. Bankruptcy Schedule I states that she relies on family assistance to help her on a monthly basis. Her income, per bankruptcy documentation, is approximately twenty-five percent (25%) of the amount stated in the credit application.

The credit application clearly respects the Debtor's financial condition. It contains information on her employment, including her annual income. It also states she pays $450.00 each month in rent. Debtor checked a box at the top of the form that declares she is "applying for individual secured credit in [her] name and relying on your own income and assets . . . ." Debtor has not disputed these elements of the § 523(a)(2)(B) claim.

The third element is contested. Debtor contends that Plaintiff cannot prove reasonable reliance because it did not verify her income through a request for pay stubs or otherwise seek additional financial information from her. The Sixth Circuit breaks the reliance element down into two components: proof that the creditor actually relied on the false statement and proof of the reasonableness of the statement. Oster v. Clarkston State Bank (In re Oster), 474 Fed.Appx. 422, 425 (6th Cir. 2012) (unpublished) (citing Field v. Mans, 516 U.S. 59, 68 (1995)); Bomis v. Union Fire Ins. Co., 25 F.3d 1047 (6th Cir. 1994) (unpublished). Considering this is the only financial statement that Plaintiff had in front of it when extending credit, and Plaintiff introduced sworn affidavits from bank employees attesting to Plaintiff's reliance on the document, as well as Debtor's failure to challenge on this front, the court must conclude that Plaintiff did, in fact, rely on the information in the credit application. The question then turns to whether the reliance was reasonable.

The Sixth Circuit has favorably cited five factors a court can utilize to determine whether

3

reliance is reasonable:

> (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

Oster, 474 Fed.Appx 422, 426 (citing BankBoston Mortg. Corp. v. Ledford (In re Ledford), 970 F.2d 1556, 1560 (6th Cir. 1992) *cert. denied* 113 S.Ct. 1272 (1993)). Debtor argues that whether reasonable reliance exists is a question of fact that prevents summary judgment. Her position is that Plaintiff cannot demonstrate reasonable reliance because it did not seek additional or confirming information concerning Debtor's income and assets and did no further investigation.

Bomis discusses the duty to investigate and its relationship to reliance. As the Sixth Circuit pointed out, "the reasonableness requirement operates to bar non-dischargeability only where the creditor's asserted reliance was so unreasonable as to negate the existence of actual reliance." Bomis, 25 F.3d 1047 (citing Ledford, 970 F.2d 1556, 1560 (6th Cir. 1992)). Whether a creditor has a duty to investigate depends on the "circumstances thought most relevant to the reasonableness inquiry." The five factors outlined above drive the determination.

Although the inquiry is factual in nature, it doesn't mean that a court cannot grant summary judgment. Once the moving party establishes the elements necessary for its claim, the nonmoving party is required to 'go beyond the pleadings and by [its] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."' Harvey v. Campbell Cnty. Tennessee, 453 Fed.Appx. 557 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). "The 'mere possibility' of a factual dispute is not sufficient to create a triable case." Baird v. NHP Mill Creek Apartments, 94 Fed.Appx. 328 (6th Cir. 2004) (citing Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)). A genuine issue of material fact is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Through its affidavits, Plaintiff established the reasonableness of its reliance. It is now up to the Debtor to establish an alternative, but equally plausible, view of the facts that show Plaintiff was not reasonable. The court finds that Debtor failed in her task.

Even viewing the facts in the light most favorable to Debtor, they demonstrate that Plaintiff did not have a close personal relationship or friendship with Debtor. The parties did have a

previous relationship whereby Plaintiff lent money which Debtor repaid, without issue. This created a relationship of trust. The loan at issue in this adversary was a personal loan for the purchase of a vehicle. The total loaned was approximately $5,000.00 more than the previous loan but the payments were in the same neighborhood: Debtor paid $331.88 under the first loan and the present loan was paid at $360.41 per month. There is simply nothing remarkable on these facts that challenge Plaintiff's reliance.

Debtor suggests that the fact Debtor did not complete the application and Plaintiff did not request any documentation creates issues of fact that speak to reliance. The court disagrees. Debtor fully disregards that she signed the credit application and knew the purpose for which it was submitted. The representation of her income on the credit application is not hidden or confusing and clearly states that she makes $36,000.00 per year. Upon receipt of the credit application, Plaintiff took and additional step and obtained a credit report. The report verified Debtor's continued employment. Plaintiff points out that it matched the previous employer information on file, thereby suggesting steady employment.

Plaintiff itself denies that the income differential between the first application, for the Mazda, and this application raised a red flag. In the first application, Debtor stated she earned $1,800.00 per month, or $21,600.00 per year.[2] In the second application, her income increased to $36,000.00. The court cannot conclude that this difference is sufficient to create a duty on Plaintiff to conduct a further investigation. Sixteen months passed between applications. It is not unheard of for an employee to advance to another position or higher pay. Further, Debtor had paid off her first loan very early. The last payment was due in June 2016 but Debtor repaid the loan, in full, in 2012.

While Plaintiff could have easily requested pay stubs from Debtor, and may have easily been able to determine Debtor's true income, the court finds nothing in the record that would have raised a red flag to alert Plaintiff of the need for additional investigation. On the circumstances of this case, the court finds that Plaintiff's reliance was reasonable. Debtor failed to highlight any facts, or red flags, that obligated Plaintiff to conduct further investigation before making the second loan to Debtor, nor is there any evidence of bad faith by the bank.

The court finds this case to be remarkably similar to Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163 (6th Cir. 1985). After completing a financial statement showing net worth of more than $100,000.00, the bank lent the Martins $2,500.00, secured by a bank account. The Martins repaid the loan with no problem. Later, Mr. Martin sought another $2,500.00. Although Mr. Martin had lost his job at that point, he did not update the financial statement. The bank made another $2,500.00 loan, this time unsecured. Approximately two and one-half months after the loan was made, the Martins filed a chapter 7 bankruptcy petition. The schedules shows a negative net worth of $47,000.00. The bank challenged dischargeability of the loan under 11 U.S.C. § 523(a)(2)(B). The court found for the bank. In discussing the reasonable reliance, the court concluded:

---

2 Based on information in Debtor's Statement of Financial Affairs, these figures also appear inaccurate.

5

> Here the loan was small, especially when compared to the purported net worth of $100,000; the Bank had prior business dealings with the Martins, leading them to believe them reliable; and the Bank did in fact obtain a credit report. We cannot say on these facts alone that the Bank unreasonably failed to make an adequate investigation of the Martins' financial condition.

Id. at 1166-67.

Although Plaintiff raises arguments concerning the intent element of a § 523(a)(2)(B) claim, the court cannot find any quarrel by Debtor challenging this element. In an abundance of caution, the court will consider Debtor's contention that the Chuck Nicholson employee completed her credit application as a fact that negates any ill intent on her part. To satisfy the intent element, Plaintiff needs to prove either an intent to deceive or gross recklessness. Oster, 474 Fed.Appx. 422 (citing Martin, 761 F.2d at 1167 (emphasis deleted) (other citations omitted)). Signing a credit application that misrepresents annual income amounts to gross recklessness.

Debtor's position really seeks to force the court to find the following: as a matter of law, a creditor cannot rely on a financial statement signed by a debtor for a consumer purchase without conducting a further investigation beyond a credit report, even where there is a prior, positive recent loan of the same type between the parties. This is a bridge too far.

## **CONCLUSION**

Plaintiff established the four elements of its § 523(a)(2)(B) claim. Debtor signed and submitted a credit application that contained false information about her annual income to Plaintiff. The application concerned Debtor's financial condition. Plaintiff submitted affidavits that supported its claim of reliance on the credit application. Its reliance was reasonable, as demonstrated by Plaintiff's obtaining a credit report to verify information, the parties' previous loan relationship, and the amount of the loan compared to the previous loan. Debtor did not introduce any facts that show an red flags that would have required Plaintiff to conduct an additional investigation, nor were there any facts that show bad faith on Plaintiff's part. Debtor was grossly reckless in signing the credit application with inaccurate income information.

Plaintiff's motion for summary judgment is well-taken and the court will grant it by separate order to be entered immediately.

#   #   #

**Service List:**

Christopher C. Camboni
106 E. Market Street
Tiffin, OH 44883

John H Hornbrook
1400 N Market Ave
Canton, OH 44714-2608